ÍVÍartin, J.
delivered the opinion ofthe Court. This suit originated by a writ of sequestration obtained by Emmerson on thirty-two bales of cotton, by rhim spld to J. F. Gray and Jno. Taylor, New-Orleans, on a credit of sixty days, for which he took their note they having tailed about nine days after the sale.
Gray and Taylor, of Philadelphia, intervened claiming the cotton as their property ; their claim being resisted by Emmerson, the issue was tried *698 by a jury and there'wsis a verdict and judgment^ for Emmerson. Gray and Taylor appealed.
East. District.

July 1815.

The statement of facts, after admitting the sale and failure as above stated, sets forth:
That one of the firm of Gray and Taylor came to New-Orleans, some time before the purchase of the cotton, and having determined to put a stop to the. unlimited drafts of J. F. Gray and Jno. Taylor on Gray & Taylor^ resolved not to accept any of them, beyond the amount of'any quantity of produce which J. F. Gray and J. Taylor should place in the hands of an agent of Gray and Taylor ; accordingly Bell, a person who had been a clerk of J. F. Gray and J. Taylor for about two years before, was so at the time and continued so till their failure, was chosen for this purpose. He received from Gray and Taylor the keys of two ware-houses, which were rented by J. F. Gray and j. Taylor*and by them underlet to Gray and Taylor, and was informed that J. F. Gray and J. Taylor were to buy a quantity of cotton for the account of Gray and Taylor, which they were directed to lodge in. Bell’s hands. Orders , were -given t® Bell to place all such cottons in the ware-houses aforesaid, giving a receipt therefore to J. F. Gray and J. Taylor and ship it, and when the ware-houses were emptied to return the keys to J. F. Gray and J. Taylor, and either draw on Gray and Taylor *699 for the rent, or desire J. F. Gray and J. Taylor to debit Gray and Taylor for it.
Soon after this J. F. Gray and J. Traylor delivered to Bell a parcel of cotton (othér than that which is the, subject of the present suit) took his receipt as agent of Gray and Taylor, and drew a bill for the amount on Gray and Taylor. The bill reaching the drawees by mail, before Bell’s receipt, acknowledging he was in possession of the cotton, they refused to accept ; but the receipt arriving next mail, the bill was accepted and paid at maturity.
The thirty-two bales, now in dispute, were next purchased by J. F. Gray and J. Taylor, from Emmerson, on a credit of 60 days and their note given accordingly, they then placed eighteen of these bales in the hands of Bell, for the account of Gray and T-aylor, taking his receipt therefore, made a draft on.Gray and Taylor, which they used in their own affairs, -and which reaching the drawees, after the receipt of Bell, was, duly,honored.
J. F.Gray and J. Taylor, were in failing circumstances for about three years before their failure, which was not occasioned by any loss, within that time. Bell had access to their letters, books and papers. To his knowledge, his agency for Gray and Taylor was not known in New-Orleans out of the house of J. F. Gray and J. Taylor: but Gray and Taylor had not requested that it might be kept secret.
*700 J. F. Gray and J. Taylor, during the agency of Bell, bought other produce for Gray and Taylor, but nothing purchased"during that time, went to the discharge of any debt due by J. F. Gray and J. Taylor to Gray and Taylor. These transactions being kept perfectly distinct from all others.
There was some produce of J. F. Gray and J. Taylor in the ware-houses by them underlet to Gray and Taylor.
J. F. Gray and J. Taylor failing, before the note given to Emmerson for the cotton became due, he sequestered the cotton, exercising his droit de suite.
. Gray and Taylor intervened claiming it as their property, denying the right of Emmerson to arrest it, as it was no longer in the possession of his vendee, and as they had acquired a fair title thereto by receiving a delivery of and paying for it.
The only questio^ for the determination of this Court is whether the transaction on the part of Gray and Taylor be attended with fraud, as the property sequestered had actually passed out of the possession of the vendees.
Emmerson’s counsel believe they discover it in the double capacity of Bell, in this transaction. He was at the same time the clerk of J. F. Gray and J. Taylor and the agent,of Gray and Taylor..
*701 We are of opinion that this circumstance may be sufficient to awake our suspicion and to excite our enquiry ; but when we compare it with those which precede, attend and follow, it does not appear that it ought to have any influence on our decision. -
We notice the absence (as far as the facts stated go) of any circumstance from which any collusion between J. F. and J. Taylor and Gray and Taylor might be inferred. That the real object of Gray and Taylor in appointing Bell their agent was to remove the produce for which they were to pay, from the control of J. F. Gray and J. Taylor, is manifested by their refusal to honor their bill, while the evidence of the delivery of the cotton remains behind, and the ready honor they do the bill as soon' as the evidence is received. Heneé the appointment of Bell, as an agent of Gray and Taylor, appears to us a correct transaction.
Let us now examine the transaction which has given rise to the present disputé.
We have seen that when the partner of Gray and Taylor was here, he mentioned to Bell his directions to J. F. Gray and I. Taylor ; we now See the latte accordingly make a purchase"; when that is done in the words of the statement of facts “ they (the bales) were weighed” placed in the deponent’s (Bell’s) hands, and by him “ stored.” He gave his receipt, engaging to hold and deliver *702 them to the order of Gray and Taylor. Seeing this receipt, the latter accept a bill and finally pay for the cotton.
We see nothing that authorises us to call this a fraudulent purchase.
The counsel'of Emmerson contends that admitting the fairness of the purchase, still he has his droit de suite, because the cotton lies still in the possession of his vendees.
IÑ the possession of the vendees, 1.. because J. F, Gray and .J. Taylor pay rent to the proprietors of the ware-houses in which the cotton is found.
2. Bec aüsE it is under their control, being under that of their clerk.
3. Because the cotton being bought of hjm for the account of Gray and Taylor, they are his sendees,
I. Although tine underletting of the warehouses ¡of J. F. Gray and J. Taylor was not publicly known, it does not appear that there was any intention to keep it concealed : and the cotton being stored in their ware-houses is not a circumstance that, may have tended to deceive Emmersón. Sinqe it was previous to his parting with the cotton. If Gray and Taylor have voluntarily, and with the view to induce persons to trust J. F. Gray and J. Taylor, filled ware-houses, apparently occupied by the. latter,.with produce and *703 thereby aided them in obtaining a credit, which they otherwise could not have had, those who tnay thereby be injured may offer this cir cum-stance, as a reason why they should be paid out of these goods, with a success of which we are not now to decide. But Emmerson may not say that this circumstance produced any injury to him, the cause cannot be posterior to the effect.
II'. It does not follow that was is under the control of the clerk is necessarily under that of his employers. The conduct of Gray and Taylor manifests their opinion that produce in the hands of Bell was safer than in those of J. F. Gray and J. Taylor, for they refuse to pay for cotton till: they hear of its passage from the hands of the latter into' those of the former.
III. Although the cotton was purchased for Gray and Taylor, they were not the vendees of Emmerson ; J. F. Gray and J. Taylor did not bind them by the contract. Emmerson took the botes of J. F. Gray and J. Taylor ; the liability of Gray and Taylor was never to begin till after their agent had actually produce in his hands: and then they were to accept and pay drafts to the amount#
Upon the whole, no fraud, in our opinion, can be attributed to Gray and Taylor from any circumstance before us< If they lessened the stock *704 from which the creditors of J. F. Gray and Jno. Taylor were to be paid by withdrawing from it the cotton, they increased it by accepting, and paying drafts to the amount of its value. This transaction was not disadvantageous to the mass of creditors.
If by this transaction they have furnished to J, F. Gray and J. Taylor the means of destroying the lien of Emmerson on the cotton ; they have enabled them to do what was lawful to be done what Emmerson does not appear to have cared to prevent. What without tljeaid of Gray and Taylor, might have likely been effected without difficulty.
J. F. Gray and J. Taylor are not even charged with having embezzled the proceeds of the. bill; the counsel of Emmerson, in argument advances it Went to satisfy more pressing creditors.
Were we to give judgment against Gray and Taylor, the estate of J. F. Gray and J. Taylor would be enriched by the valine of the cotton to the detriment of Gray and Taylor. Neminem opportet cum alterius detrimento locupletari.
If Emmerson does suffer; be suffers because he has trusted, he is the victim of his Gonffilenof, Gray and Taylor gave no/credit ; they therefore ought not to lose.
*705 The judgment of the 'District Court is, there-0 re, annulled and reversed, and this Court orders and decrees that the appellants Gray and Taylor recover the eighteen bales of cotton, found in the hands of Bell their agent, and that the appellee deliver the same, and pay all costs.