Porter, J.
delivered the opinion of the court. The plaintiff sold on the 26th March. 1820, to Samuel Packwood, a plantation and slaves, for the sum of 110,000 dollars : 25,000 dollars of which was paid in cash, and for the *519 balance, notes were given, indorsed bv ° . berry Dorsey. The act of sale contained; a warranty of all debts, gifts, mortgages, evictions, alienations, and other incumbrances whatever; — a declaration of the vendor, that according to the certificate of the register of mortgages, the land and twenty-nine of the negroes were hypothecated in favor of Al-bín Michel, for securing the sum of 55.000 dollars; and that he had paid 22,6136 dollars 66 cents, in discharge of it. Mention is also made of another mortgage resulting from a judgment, for the sum of 1021 dollars 87 cents.
By an instrument of the same date with the deed of conveyance just stated, the defendants, Morgan, Dorsey & Co., acknow-leged to have received of “ J. Lafarge the notes of S. Packvvood, indorsed by G. Dorsey, to the amount of 55,000 dollars, being part of the notes mentioned in the bill of sale of plantation, sold by Lafarge, to S. Packwood, held until the mortgages on said plantation are raised by said Lafarge, and when the said mortgages are raised, the notes to be returned to Lafarge. But the notes to be returned in proportion as the mortgages are raised, so *520 that no more in amount is to be retained than . , remains oí the mortgage uncancelled.
Qn 31 st of the same month, the plaintiff presented to the defendants a certificate from the register of mortgages, dated that day, which stated that the mortgage granted by John Lafarge, to Albin Michel and Marguerite Cabaret, his wife, by an act passed 21st May, 1819, for the sum of 55,000 dollars was reduced to $ 16,366 66 cents; and demanded of them, that the notes placed in their hands, should be delivered up in the proportion that the mortgage had been diminished. To this application, they replied, “ that they were not satisfied w ith the releases granted by the holders of the notes secured by said mortgage, but required that the same should be released by Michel and his wife, and that they would not give up possession of the notes or obligations until the incumbrances granted by Lafarge, in his act of purchase should be raised by those persons.”
On the 10th of April following, this action was instituted in which the petitioner demands that the defendants be decreed to give up all the notes placed in their hands, except the sum of 16,366 dollars 66 cents; and that they *521 be condemned to pay him 10,000 dollars, the damages he has sustained by their breach of contract.
The defendants answered. — Admitting : the deposit for the purposes averred in the receipt: averring, that they were ready to hand over the notes whenever authorised by Packwood, and had always been willing to do so — that Packwood had instructed them there existed on the plantation divers mortgages, particularly one in favor of Albin Michel and his wife, and had forbidden them to deliver up the notes to the plaintiff
That attachments had been levied on these notes; one at the suit of Samuel Ruggles for 25,000 dollars, and the other at that of William D. Patterson for 6,666 dollars, 66 cents; and they prayed that S. Packwood, and A. Michel and wife, should be made parties, and that if damages were awarded to the plaintiff, they should be condemned to pay them.
Albin Michel was cited, but did not appear. Packwood made himself a party to the proceedings, and averred that he had expressly directed Morgan, Dorsey ⅜- Co. not to give up the notes; that they were bound as seques-trators to hold them, until all the mortgages *522 were raised,and the title made valid, and com- , 11 , . , píete in law; and be prajed that they might be decreed to retain them until the plantation an(j sjaves were discharged from all incum-brances or liens whatever.
The cause was tried by a jury, who found for the plaintiff, damages 4,000 dollars. On this verdict, judgment was rendered that the petitioner recover of the defendants that sum, and that they return of the notes placed in their hands, the amount of 38,633 dollars 33 cents. The defendants have appealed.
The first question to be decided, is whether the appellants are responsible, and liable to pay damages for their refusal to give up the obligations when called on. The second is, should they now be decreed to restore them.
it is a matter, perhaps, of little importance in settling the rights of the parties in this action, whether the defendants are considered depositories strictly such, or conventional se-questrators, as with some slight exceptions, not necessary to be-noticed in this case, acting in the latter capacity, without compensation, creates the same obligations, as the real contract of deposit.
*523 If we consider them as sequestrators acting for both parties: for Packwood, who had a great interest to prevent these notes getting into circulation improperly: for Lafarge, to whom it was important that they should not be retained after the incumbrances were raised ; their duties may be easily defined : they were obliged to hold the notes until both parties agreed to their delivery, or if they could not agree, until a court of justice decided they should be given up.
The whole circumstances of the transaction, as proved in evidence, induce us to regard the defendants as conventional seques-trators, and subject to the obligations just stated.
Should we, however, adopt the construction which the plaintiff contends for, that by the terms of the receipt the defendants undertook to return the notes and obligations on the happening of a certain event; and that in doing so they took on themselves the risk of judging whether it had in reality occurred or not, the circumstances, under which they entered into that engagement, must be considered in ascertaining what consequences follow if they committed an error in the interpretation of it. The contract was entirely gratuitous; nothing *524 of course will make them responsible, but . , . * gross negligence in keeping the property, or fraud in refusing to give it up. No proof of that ⅛⅛<1 has been made in the suit before us. It has not been shewn they had any interest in holding these notes, or that they acted in bad faith. By the words of the receipt they were to give up the obligations when the mortgages were cancelled. If they gave them up before they were cancelled, they violated their contract, and would have been responsible in damages to Packwood, for whose interest that condition was inserted. In what situation then (according to this doctrine) would these men, acting in good faith, have been placed ? Without reward or compensation, made responsible in damages for mistaking the law, in a matter which the courts of justice to whom it is submitted, have found difficulty in settling, after much time has been taken for reflection, and the judges have had the assistance of able counsel to aid their deliberations. This never could have been the intention of the parties, and we are all clearly satisfied the law creates no such responsibility. In regard to Packwrood, by whose directions the defendants acted, a different question *525 is presented, and there is no doubt, that if, • i ii without a justifiable cause, he prevented the plaintiff from the enjoyment and use of his property, he is responsible in damages for the injury inflicted.
The next question is, whether the plaintiff’ has a right to recover the amount of obligations sued for. The defendant, Packwood, insists that mortgages yet exist on the property, that they have not been discharged, and that he has a right that every incumbrance should be removed.
The opinion which the court has formed on the whole case, renders it unnecessary to examine a point much disputed, whether the terms of the receipt extended to all liens existing on the property, or merely those of which mention was made in the bill of sale.
The plaintiff, who alleges that the liens on this property have been cancelled or released, first presents us with a certificate from the register of mortgages, to establish the reduction of that in favor of Michel and wife. The defendants object that the recorder canceled the mortgage on irregular and insufficient evidence, and that it still exists. Testimony, such as was introduced here, is not *526 sufficient to authorise us to say so. The cer- . , ni , . tificate is admitted on all hands to be prima yaeie evidence of the fact stated in it. It is not conciusiVe : it may be contradicted. But to destroy the credit attached to it, the party who attacks its verity, must do more than offer proof which leaves that verity doubtful. He must shew it to be false : he must establish that the officer acted on evidence that was untrue, not merely on that which was irregular. The holders of the notes were authorised to raise the mortgages. To prove they did not, the appellant insists that copies of the acts would have been better proof to the recorder than certificates of the notary, of what these acts contained. This is, perhaps, true; but it does not falsify the certificate granted by the recorder, that the holders of the obligations had, in fact, raised the mortgages. And we do not see that there is any good cause for the apprehensions e*pressed, that Michel and his wife may, at some future time, shew these mortgages have not been released. The law makes the recorder responsible, if he errs from design, or from negligence; and if the party in this case dreaded, that this responsibility was not a sufficient guarantee, he should have *527 offered proof sufficient to authorise us to declare the certificate untrue. In the case of Dreux vs. Ducourneau, 5 Martin, 625, the decree of the parish court, which was the only foundation for the certificate of the register, was shewn to have been granted in a suit where the mortgagee was not a party.
The lien, proceeding from the dower, brought by Mrs. Albin Michel into marriage, is presented as an objection to the petitioner succeeding in this action.
By an act of the legislature, passed in the year 1813, 1 Martin, 700; all marriage contracts of this city, are directed to be recorded in the office of recorder of mortgages ; and if not recorded agreeably to the provisions therein contained, it is declared, they shall be utterly null and void, to all intents and purposes, except between the parties thereto.
This law is said to be unconstitutional, in requiring acts made previous to its passage, to be recorded. No reason was offered in support of this position, and we have not been able to find any. It impairs not the obligation of a contract, it only prescribes a certain formality to give it effect. If the legislature could not regulate matters of this kind, they *528 could not control the forms of proceedings . _ . in our courts of justice, nor pass a law in relation to any thing which already had existence.
^ good deal was said on inconveniences that must ensue if the provisions of this act were recognised, as applicable to contracts of marriage. But when the legislature clearly, and unequivocally express their will, it is not for this court to refuse to carry it into effect, because inconveniences may result from so doing. Considerations, such as these, we presume, were in the contemplation of the law-maker, estimated by him, and found not to be of sufficient weight to counterbalance the benefits that were otherwise to be derived from the enactment. Arguments ah inconvenienti are well worthy of attention, where the law is doubtful; when it is plain and explicit, our duty is confined to obey what is written, and to enforce it. In the case of Cassou vs. Blauque, suit had been brought and was pending, when the act was passed.
The renunciation of the wife before the notary, of all her claims on this property, ap^ pears to the court, to be binding on her. It follows almost literally the words of 58th law *529 of the 18th title, of the 3d Partida. And the of-J J ficer, who executed the sale, was cautious in stating to her what right she abandoned.— Febrero de Escribanos, cap. 4, sec. 4, n. 121.
The oath, which the counsel contends, should have been added to it, is not required by this law, nor by any other, that our researches have furnished us with. Febrero, part. 2, lib. 1, cap. 3, sec. 1, n. 46. It was probably introduced into the Spanish jurisprudence from the canon law. It may have been found useful in deterring married women from violating agreements; but it is not seen how it could have given the contract a greater validity. We have no wish to multiply oaths in the transactions of society. The author just quoted says, though the wife may have sworn once she would not alienate her property, yet the second oath, when she does alienate, shall be binding.
In regard to the attachments levied on these notes, they of course must be released, before the defendants can be compelled to give them up.
It is therefore ordered, adjudged and decreed, that the judgment of the district court. *530 be annulled, avoided and reversed, and pro- ' . . ceeding to give such judgment, as m our opi-njon ought to have been given ; it is further adjUijged and decreed, that the defendants deliver over to the plaintiff, the notes of S. Packwood, endorsed by Greenbury Dorsey, to the amount of 23,633 dollars 33 cents, as specified in the petition, as soon as the attachments on the same, in the hands of said defendants, at the suit of Samuel Ruggles vs. John Lafarge, and William D. Patterson vs. John Lafarge shall be dismissed : and that they pay the costs of this suit.
It is further ordered, that nothing contained in this decree, shall affect, or impair any right which the plaintiff may have to demand damages of S. Packwood, if any be due, for having-prohibited the delivery of the notes deposited in the defendants’ hands.