## THOMPSON, Executor *v.* MYLNE.

A judgment which does not contain the reasons for which it was rendered, cannot have the force of *res judicata.*

An intervenor cannot complain of want of notice of an order made in open court, between the original parties. An intervenor is presumed to be always in court, ready to plead. C. P. 391.

Art. 1934 of the Civil Code does not apply to merchants' accounts.

The commercial law, as settled in the other States of the Union, is uniformly followed by the courts of this State, where no statutory provision prevents a resort to it.

By the general commercial law, where the custom of the place and the practice of the parties is to strike a balance of their accounts at fixed periods, and to render the account, the balance, composed of principal and interest to date, is viewed as the capital of the creditor, on which he is entitled to charge interest from that date. Acquiescence in an account so rendered, though not *per se* an agreement to it, is evidence from which it may be inferred that the party, who received it without objection, agreed to continue the same course of dealing, and to retain the balance on paying interest.

By the custom of this State, it is understood between planters and their factors that the latter are to render accounts annually, after the sale of each crop, and, if the balance in favor of the factor is not paid, that interest is to be charged on such balance, at the rate agreed on, though made up of capital and interest.

The laws regulating the rate of interest apply to commercial as well as ordinary transactions, and conventional interest cannot be changed in any case without a written agreement to pay it.

A preparatory decree, prescribing the manner of proceeding deemed necessary by the court to arrive at a final decision, cannot have the force of *res judicata.* It remains under the control of the court, subject to its revision, until a final decision.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. No counsel appeared for the plaintiff. *Briggs* and *Grymes,* for the appellant. *Seghers, Simon* and *Morphy,* for the intervenors. The judgment of the court (*Eustis,* C. J. not sitting, having been of counsel for plaintiff,) was pronounced by

ROST, J. Before the decision of the Supreme Court in the case of *Thompson* v. *Mylne,* in 2 Rob. 349, the defendant had filed two accounts, showing the situation of *George B. Milligan* with the firm of *A. & J. Dennistoun & Co.,* and with the Bellechasse plantation. After the case was remanded, the intervenors, who appear from that time to have superseded the plaintiff in the management of it, filed an opposition on a great variety of grounds, among which are the following: 1. The intervenors oppose all items in the accounts foreign to the concerns of the partnership, the same not being within the jurisdiction of the District Court. 2. They oppose the charge of $4,462 35, for *Milligan's* third of the cost of 708 shares of Union Bank stock, secured on the plantation, on the ground that it was the private property of the defendant, who held it in his name, and borrowed money on it on his own account. 3. They oppose the manner in which interest is calculated in the whole account no. 2, as it imports interest on interest, contrary to all legal principles, and in violation of art. 1934 C. C. They asked, at the same time, that the defendant might be ordered to

file, in place of the accounts opposed, other detailed accounts, showing every transaction, every receipt and disbursement by and between the parties, reserving to themselves all legal objections to the same and to every part thereof, when they shall have been filed.

The court, without going into details, or giving any reasons, ordered that all the exceptions be sustained, except that in relation to the charge of the price of the bank stock, which was reserved to be investigated by the auditors about to be appointed. The court then ordered "that auditors be appointed, and that all matters of account be referred to them, with instructions to examine and investigate the same, and to report to the court the balance, if any, which may be due by the estate of *Milligan*, on the price of his third part of the Bellechasse plantation and slaves, conformably to the judgment of the Supreme Court, and the present judgment."

Auditors were accordingly appointed. The defendant produced before them the new account he was ordered to file in court, and they made a report thereon, in conformity with the directions of the court.

The intervenors having taken a rule upon the defendant to show cause why the report should not be homologated, he opposed the homologation on the following grounds: 1. That the auditors have rejected all the charges in the account which are personal to the late *G. B. Milligan*, and foreign to the partnership. 2. That they have rejected the charge for the cost of Union Bank stock. 3. That they have neglected to observe the mode of stating the accounts and of calculating interest, pursued by him, and by the firm of *A. & J. Dennistound & Co.*

The intervenors contend that two at least of these three grounds of opposition have been already decided in their favor, by the decree appointing the auditors; that this decree has not been appealed from, and that the delays for appealing having expired, it forms *res judicata*. There is a fatal objection to the finality and binding force of this alleged judgment. It does not contain the reasons upon which it was rendered. If it was valid in form we could view it in no other light than as a preparatory decree, directing the auditors how to proceed in the adjustment of the accounts. The record contains ample evidence that it was so considered by the parties, by the auditors, and by the judge. Viewing it in that light, it is necessarily before us on the appeal from the judgment of homologation.

In relation to the first ground of opposition, it was held by the Supreme Court that the accounts concerning the partnership were within the jurisdiction of the District Court, but that all private claims against *Milligan* should be settled and liquidated before the Court of Probates. The jurisdiction of that tribunal having since merged in that of the District Court, and the evidence of the private, as well as of the partnership, debts being before us, we will proceed to adjudicate upon the whole, as far as the state of the case will permit us to do so.

The Bellechasse plantation was first acquired by *Dennistoun & Co.*, who sold one-third interest in it to *Milligan*. The accounts in the record show that the price of this third has stood ever since on the books of the firm as a debt due to it, and that the subsequent transfers of the property have not changed the original relation between the firm and *Milligan*. By the articles of partnership this firm was appointed factors of the plantation. It has acted in that capacity ever since, made all the necessary advances, and kept all the partnership accounts. In these accounts of the plantation, no items were charged or credited which did not appertain to the joint concern. But, besides these accounts, the partners

had private accounts with their factors, and *Milligan*, who lived on the plantation, was in the habit of drawing upon them for all the small items of his private expenditure. In making up the yearly accounts, one-third of the nett proceeds of the crop was placed by the factors to the credit of *Milligan;* out of this third and of his salary as manager, the amount of his private account was first deducted, and the balance was credited to him on the price he had agreed to pay for his interest in the plantation.

Such appears to have been the course of dealing between the parties up to the death of *Milligan.* It was made known to *Alexander Dennistoun,* who so far from complaing, sanctioned it, requesting merely the firm to keep *Milligan's* private account down as closely as possible. The very sum of $2,575 59, due by *Milligan* for his proportion of loss in a cotton speculation, which is specially objected to by the intervenors, appears to have been paid out of the proceeds of crops, with the assent of *Dennistoun.* Neither he, nor the defendant, have ever objected to these appropriations, and they do not object to them now. The intervenors have no right to raise the objection for them. *Bludworth* v. *Jacobs,* 2 An. 24. *Dunbar* v. *Bullard,* 2 An. 821.

It is alleged that this course of dealing, and the acquiescence of *Dennistoun* in it, are only proved by documents which, although found in the record, are not properly in evidence. The record shows that, on motion of counsel for the defendant, the plaintiff was ordered to produce and file in court, four days after the date of the order, all the papers and accounts which were inventoried in *Milligan's* succession, under the description of "A bundle of papers, containing Bellechasse accounts, and marked letter C." These papers were accordingly produced by the plaintiff, who, at the time of filing them, made oath of their identity.

The intervenors complain that this order was obtained *ex parte*, and granted in the dark, without any notice to them. Those complaints appear to us unfounded. No law requires personal notice to be given to intervenors in such cases. The application was made and the order granted in the usual form, and in open court, where intervenors are always presumed to be ready to plead. C. P. 391. The order bears date the 16th February, 1846, the very day on which the decree ordering the appointment of auditors was rendered. The minutes show that, on the next day, the counsel of the intervenors was present at the opening of the court, and appointed one of the auditors; the reading of the minutes must have informed him of the order granted the day before. He was bound to know, and, we have no doubt, did know, the contents of the minutes. Several days elapsed after this before the accounts were filed, and fifteen months were wasted in litigation before the rendition of the judgment appealed from. The intervenors had notice of the order and of the documents after they were filed, and suffered them to be received as evidence, without alleging either collusion or fraud against the other parties to the suit, or raising any other objection. They now contend that there is no evidence of the identity of those papers and accounts with those which were found by the judge in making the inventory; that they do not appear to have been paraphed and numbered as the law requires, and should not be considered as evidence. The defendant cannot be prejudiced by the omissions of the magistrate who made the inventory. It was stipulated in the contract of partnership between *Milligan* and the firm of *Dennistoun & Co.*, that annual accounts should be rendered to *Milligan* by his factors. His inventory makes mention of a bundle of accounts and letters found in his succession, and his executor, being ordered to produce those accounts and letters, has filed in court

such accounts as the factors were bound to render, and letters of *Mr. Dennistoun* and of the firm explaining some of those accounts. The warrantors were aware that the documents inventoried had not been paraphed by the judge, and that the inventory made no mention of their number. They might perhaps have opposed on those grounds their introduction as evidence, and required proof of their identity beyond the oath of the plaintiff; or, after the papers were filed, they might themselves have controverted that identity and attempted to disprove it by the books of *Dennistoun & Co.*, by the witnesses to the inventory, or by other persons present when it was taken. But as this has not been done, we must hold the return made by the executor to be *primâ facie* true, and give effect to the evidence filed by him.

We stated at the beginning of this opinion that, on the first trial of the cause in the District Court, the defendant offered in evidence the account of *Milligan* with the Bellechase plantation, taken from the books of *A. & J. Dennistoun & Co.* This account contains the following entry :

"One-third cost of seven hundred and eight shares of Union Bank stock, bought on account of plantation and owners, $4,462 50."

The judge of the District Court considered that the word *owners* must have reference to *Mylne* and *Milligan*, and gave this, as his own reason, for deciding that *Milligan* was one-third owner of the plantation. On appeal, this decision was affirmed.

If this entry, found in the books of the common factors of the parties, is sufficient to prove the interest of *Milligan* in the plantation, it must *a fortiori* prove his interest in the stock. It has been urged that this account cannot make proof in favor of the defendant, by reason of his interest in the firm who kept it. *Milligan* was apprized of the existence of that interest when he made the contract which has given rise to this controversy, and the will by which he entrusted the settlement of his estate to the plaintiff in this suit. In selecting the firm as his factors, and the plaintiff as his executor, he intended to invest them with the rights of factor and executors ; and so long as no fraud is alleged or shown, it is proper not to lose sight of that intention, and to give these parties the benefit of the character for truth and integrity upon which the confidence of *Milligan* reposed.

But it is shown, moreover, that the account containing the charge for the price of Union Bank stock, was rendered to *Milligan* with a memorandum, stating that it had been put in the name of *Milligan* for the sake of convenience, but belonged, in truth, to the owners of the plantation. A letter of *Alexander Dennistoun* corroborating this item of the account was also found in his possession; it is not shown that he ever repudiated the purchase, and no reasonable doubt can exist, that it was made on joint account. *Milligan* could not have been president of the Union Bank, if he had not been a stockholder of that institution.

The stock having no market value when the plantation was sold to *Benjamin* and *Packwood*, and standing at the time in the name of the defendant, it was not necessary to include it in the sale, and the transfer of it by the defendant on the books of the bank does not affect the right of the firm to charge the cost of it as it has done.

The last ground of opposition relates to the mode of stating the accounts, and of calculating interest. At the end of every year, a balance of accounts and a balance of interest was struck, and carried together to the new account, thus calculating capital and interest, and charging interest upon the whole. This

THOMPSON
*v.*
MYLNE.

mode of stating the accounts, was rejected by the auditors as being in violation of art. 1934 of the Civil Code, and the question now submitted to us is, whether that article is applicable to merchant's accounts.

The commercial law, as settled in the other States of this Union, has been uniformly followed by the courts of Louisiana, when no statutory provision has prevented a resort to it. Under that law it is well settled that, when it is the custom of a place and the practice of the parties to strike a balance at fixed periods, and to render the account, it brings it to the case of a fresh agreement, at the beginning of each period, to lend the sum then due; though acquiescence in the account rendered is not considered *per se* an agreement to it, it is evidence from which it may be inferred that the party who receives the account without objection, thereby agreed to continue the course of dealing and to retain the balance in his hands, rather than to pay it; the balance due is viewed as the capital of the creditor, which he leaves in the debtor's hands, on paying interest. The rule is that where regular merchant's accounts are settled from time to time, interest on interest is allowed. *Bainbridge & Co.* v. *Willcox*, 1 Baldwin, 536, and authorities there cited.

In France, where a disposition of law very similar to art. 1934 of our Code exists, it is not considered as applying to merchant's accounts. "Les comptes-courants peuvent être arrêtés à des époques aussi rapprochées qu'il plaît aux parties. Chaquefois l'intéret s'y liquide, et fait partie du solde transporté au nouveau compte ouvert. Il se trouve ainsi converté en capital pour le compte suivant. Là règle du Droit Civil qui ne permet de capitaliser les interets qu'au bout d'une année, est dans ce cas sans application. Vincens, 2, 158. Peu importe que le compte soit etabli entre deux commerçants, on etre un commerçant et un simple particulier." Dalloz, vol. 40, 221.

In adjudicating upon commercial transactions much uncertainty often arises in consequence of the non-adoption of the commercial Code, prepared by the framers of our Civil Code. It is safe to presume, however, that, in framing the Civil Code, they intended to leave our commercial jurisprudence as it was before, in harmony with that of other commercial nations. The application of art. 1934 to a case like this is inconsistent with that presumption, and we concur with the courts and jurisconsults of France that it is not applicable.

It is well understood, between planters and their factors, that the latter are to render accounts annually after the sale of each crop, and if the balances existing in their favor are not paid, interest is to be charged upon them at the rate agreed upon, although they may be made up of capital and interest. The fact that this course of dealing is universal and never questioned so long as the relation of principal and factor continues, shows the popular interpretation of the commercial law on this point; but the rights of the factors in this case, to make annual rests in their accounts, does not depend upon usage; it results from an express stipulation in the contract of partnership. In the accounts rendered to *Milligan* under that stipulation interest was charged in the manner objected to; his agreeing to continue the same course of dealing after receiving them, was a tacit consent to their correctness so far as they could be ratified.

Considering that art. 1934 of the Civil Code is not applicable to merchant's accounts, *A. & J. Dennistoun & Co.* were authorized, under the contract of partnership, to charge interest at the rate of six per cent per annum on the entire balance of every annual account, rendered by them; but the laws regulating the rate of interest are applicable to commercial as well as to ordinary transactions, and they could not charge interest at the rate of eight per cent per annum

on-the cost of the bank stock, without an agreement, in writing of *Milligan* to pay it. The bank stock account never having been paid, the intervenors are entitled to a reduction of two per-cent on the rate of interest charged. With this amendment the charges for interest are not illegal.

The defendant has asked that the case be remanded for a final adjustment of the accounts by the court from which the present appeal is taken. There can be no objection to this course. He farther asks that, for the balance which may be found under that final adjustment, the firm of *Dennistoun & Co.* may be decreed to be a creditor of the partnership.

When this case was before the Supreme Court it was stated in the opinion that, the balance which may remain due on the price of *Milligan's* share in the premises in partnership could not be considered as a partnership debt, to be satisfied by preference out of the partnership property; that his vendors, as such, cannot pretend to set up their claim as being a debt of the firm, to be paid out of the partnership assets; but in the decretal part, the right in question is not specifically and finally adjudged. After affirming the decree of the District Court, which was a final decree upon the title, and which title was thus finally adjudged, the decree proceeds to remand the cause for further proceedings in the partition of the partnership property and in the settlement and liquidation of the partnership concerns, and of the crops which the defendant is bound to account for as *negotiorum gestor*, for the purpose of liquidating the balance, if any, that may be due to the defendant, according to the legal principles recognized in this opinion, reserving to said defendant his right to prosecute his claim for such balance before the Probate Court in due course of law.

This is not to be considered as a final decree upon those rights of the parties not specifically adjudicated and closed by the decree itself. It is a preparatory decree, prescribing the manner of proceeding deemed necessary by the court to arrive at a final decision, and necessarily under its control until that decision is made. Res judicata dicitur quæ finem controversiarum pronunciatione judicis accipit, quod vel condemnatione vel absolutione contingit. L. 1, ff. De Re Judic.· "The thing adjudged does not exist before the judge has definitively pronounced on the contestation submitted to his decision, before he has admitted or rejected the claim, contemned or absolved the defendant."

These requisites have not been fulfilled in this case. The defendant has not been condemned by the decree of the court. Further proceedings were necessary to constitute *res judicata*, and the opinion of the court stands only as the enunciation of the legal principles which it considered applicable to the case, and remains as such under the control of the court, and subject to their revision. *Perkins* v. *Fourniquet*, 6 Howard, 208. *Sibbald* v. *United States*, 11 Peters, 491. *Clay* v. *His Creditors*, 9 Mart. 521. *Kittredge* v. *Breaud*, 2 Rob. 40. 4 Rob. 79.

These views are not in contradiction with those expressed in the cases of the *Succession of Durnford*, 1 An. 92, and *Kellam* v. *Rippey*, 3 An. p. 202.

In the first of these cases the former decree of the Supreme Court reversed the judgment of the Court of Probates, and remanded the case with directions to the judge below to give *McDonough* a credit on his account for the sum of $18,000, and to close the account according to law. The *Succession of Durnford* was thus finally condemned to pay that sum, and the court could not review a matter finally determined by the decree.

In the other case, *Kellam*, the plaintiff, had been finally condemned to pay the defendant for his improvements, and the case having only been remanded for the

purpose of ascertaining their value, this was the only question before the court on the second appeal.

We are satisfied that the question whether the debt due by *Milligan* is or is not a partnership debt, is still open, and as we cannot now finally pass upon the case, it must be referred to the District Court in which the succession is opened, to be decided in the classification of the debts.

It is, therefore, ordered that the judgment in this case be reversed, and the case remanded to the District Court for further proceedings, in conformity with the views expressed in the foregoing opinion; the intervenors and appellees paying the costs of this appeal.