Succession of Benjamin.

## No. 9823.

### SUCCESSION OF ALEXIS BENJAMIN.

A conventional mortgage, under our law, can result only from contract.

Where such a mortgage is claimed, under the terms of an ambiguous writing, two things are essential, viz: (1) The intention to create a mortgage on the part of the parties thereto; (2) in order to have effect with regard to third persons, the expression of that intention with sufficient clearness to serve as notice to them, when the instrument is recorded.

Finding both these essentials wanting in the instrument under which the mortgage is claimed, the right is denied.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot,* J.

*Alfred Grima,* for the Administratrix, Appellee.

*Braughn, Buck, Dinkelspiel, & Hart,* for the Opponents, Appellants.

The opinion of the Court was delivered by

FENNER, J. Loeb & Schoenfeld, holding a judicial mortgage on the immovables of the deceased, oppose the account herein filed by the administratrix, because, in distributing the proceeds of sale of the only immovable of the succession, the property No. 222 Baronne street, the administratrix awards a preference thereon in favor of Jules Aldigé, as a superior mortgage creditor.

Aldigé's claim to a mortgage rests on the following anomalous instrument:

(Face of Note.)

" $4477.79.                              *New Orleans, July 17th,* 1882.
   " *On demand, after date, I promise to pay to the order of J. Aldigé, four thousand four hundred and seventy-seven 79-100 dollars, for like amount advanced by him in payment of property, No. 222 Baronne street, in my name.  Interest 8 per cent till paid.  Value received.*
                    "*(Signed)*                 *A. BENJAMIN.*"

And the reverse of the note reads:

"STATE OF LOUISIANA, ⎱
    Parish of Orleans. ⎰

"Before me, Charles G. Andry, a notary public, duly commissioned and qualified, in and for the parish of Orleans, State of Louisiana, personally came and appeared Mr. Alexander Benjamin, of the city of New Orleans, who being duly sworn by me, notary, declared and said that he is justly and truly indebted unto Jules Aldigé, Esq., also of the city of New Orleans, as set forth in the note, which is on the reverse hereof, in the sum of forty-four hundred and seventy-seven 79-100 dollars, which have been advanced by the said Aldigé to him, the affiant, and applied by him, the affiant, to the payment of a certain piece of property, situated in the First District of the city of New Orleans, in the square bounded by Baronne, Dryades, Julia and St. Joseph streets, and bearing the municipal No. 222 on Baronne street.

"That in order to secure the payment or reimbursement of the said sum to the said Aldigé he, the affiant, does hereby recognize and acknowledge, in favor of the said Aldigé, a privilege and lien on the above described property, and he does also authorize the recording of the said lien and privilege in the office of the Recorder of Mortgages for the parish of Orleans.

"(Signed)       A. BENJAMIN.

"Sworn to and subscribed before me at the city of New Orleans, this thirteenth day of September, 1884.

"(Signed)       CHAS. G. ANDRY,
      "Notary Public."

The foregoing was recorded before the judgment of opponents, and if it be either a privilege or a mortgage, it ranks their judicial mortgage.

It is apparent that no privilege exists; and the only question is whether the writing creates a conventional mortgage.

It purports to "recognize and acknowledge" a "privilege and lien."

Under our law, the term "privilege" has a well defined meaning, different and distinct from the term "mortgage."

In a recent case we said: "The distinction between mortgages and privileges is too elementary and well understood for us to extend the plain significance of a statute nominating privileges only, so as to cover and include mortgages also." State ex rel. Jackson vs. Recorder, 34 Ann. 178.

The only kind of incumbrances on property known to the law of Louisiana are mortgages and privileges.

The term *lien* is not used in our law as significative of any particular sort of incumbrance. It is a legal term used generally to signify any incumbrance on property, but, we may say, usually employed in connection with privileges, and rarely with mortgages.

Indeed, it is quite common to use the tautological expression of *lien and privilege* as applied to a mere privilege, *e. g.* the vendor's lien and privilege, the lessor's lien and privilege.

From this it is clear that the use of the term *lien* in addition to that of *privilege* does, by no means, of itself, indicate the intention to create or recognize a mortgage, or indeed anything in addition to a *privilege.*

It is to be borne in mind that if there is any mortgage here, it is a conventional mortgage, or one resulting from a contract.

The terms of this contract being ambiguous, we must endeavor to determine what was the intention of the parties. Miller vs. Shotwell, 38 Ann. 890.

Benjamin expressed his intentions to the notary who prepared the writing indorsed on the notes. Can it be supposed that, if he had expressed or even hinted a desire to grant a mortgage, that experienced and able notary would have drawn up such a writing as is here presented ?

From the terms of the writing itself, it is perfectly clear to our minds that, from the fact that the note was given for money advanced by Aldigé, and actually applied in payment of the price of the property bought by Benjamin, the latter supposed that Aldigé had acquired a vendor's privilege on the property; and his simple object was, by the indorsement, to put the evidence of this privilege in proper shape to be recorded.

The whole language indicates this purpose, and is as far as possible from indicating an intention then and there to create a new and original right.

Such would be the purpose suggested from the reading of the instrument. It was the evident interpretation put on it by the Recorder of Mortgages himself, who, when he furnished his certificate, reported this, not as a mortgage, but as a privilege.

We have not a shadow of doubt that it was so regarded by the notary, by Benjamin, and even by Aldigé, until, under the necessities of his case, his learned counsel suggested this far-fetched theory of its being a mortgage. Nay, we note that even he, in suing on this note, originally brought a simple personal action, and the claim of mortgage is only asserted, as an afterthought, in a supplemental petition.

Mr. Aldigé, though examined as a witness, does not pretend to

assert that he accepted this contract as a mortgage, or ever regarded it as such.

To create a conventional mortgage, two things are essential, viz: the intention to create it on the part of the parties to the contract; and, in order to have effect with regard to third parties, the expression of that intention with sufficient clearness to serve as notice to them when the instrument is recorded. Both essentials are wanting in this case, and we are bound to overrule the conclusion of our learned brother of the lower court.

It is, therefore, ordered, adjudged and decreed that judgment appealed from, dismissing the opposition of Loeb & Schoenfeld, be annulled, avoided and reversed; and it is now decreed that their said opposition be sustained, and that the account of the administratrix be amended by placing the said Loeb & Schoenfeld thereon as judicial mortgage creditors for the amount claimed by them, with right to be paid out of the proceeds of the immovable property sold, by preference over Jules Aldigé and other creditors; costs of said opposition and of this appeal to be paid by the succession.

---

## DISSENTING OPINION.

BERMUDEZ, C. J. The law attaches little or no importance to the *name* by which parties designate the nature of their acts or transactions. To assist in finding and carrying out the object in view, it ascertains primarily the intention of the parties, and next determines what rights have been conferred and what obligations are to be enforced.

Among the instances in which courts of justice have applied this conservative principle are found numerous cases in which, for instance, contracts termed *conveyances* have been pronounced to be *mortgages;* in which apparent *sales* have been declared to be *donations;* in which *authentic wills* have been considered as wills *under private signature,* etc.

In the present matter it is glaring that Benjamin intended *two* things:

1st, to acknowledge, in a solemn form, his indebtedness to Aldigé, giving its origin, or consideration, viz: money lent him for the purchase of the property in question, and,

2d, to secure the payment of that debt by encumbering, in favor of Aldigé, the *very* real estate bought with his money.

It is true that, in the anomalous instrument described, uselessly put in the form of an *affidavit,* he recognizes in favor of Aldigé a *privilege*

and a *lien*, instead of a *mortgage* on the property; but this misnomer practically amounts to nothing.

It is very probable that he did not know the difference between a *privilege* and a *mortgage*, which to many is specious.

It is not shown that the notary before whom he took the oath, informed him of the meaning of the words lien and privilege, or gave him any explanation on the subject.

It is not unlikely that he thought that the payment of this debt would be better secured by a privilege than by a mortgage.

There is nothing to show what the notary and the Deputy Recorder of Mortgages *thought* of the nature of the act, and even if there was, their views on the subject could not serve to assist the court in determining a question affecting the character of the deed, and which it alone can solve.

If those views, however, be entitled to consideration, surely those of the district judge, before whom a suit was brought to enforce the debt and mortgage and who recognized the mortgage, ought to outweigh those of the notary and deputy recorder.

Mortgage is defined by law to be a right granted to the creditor over the property of the debtor for the security of his debt.   R. C. C. 3278.

In the case of Thibodaux vs. Anderson, 34 Ann. 800, this Court said that the word mortgage was not sacramental, but that an instrument to constitute a Louisiana mortgage must contain all the essential elements.

In the case of Ells vs. Simms, 2 Ann. 251, germane to the instant one, the mortgage resulted from a stipulation on a note that the drawer recognized, agreed and consented that the party " has a privilege and mortgage for the securing the payment of said sum of money." The mortgage was recognized.

The word *lien* has been used in the sense of *mortgage* in the following cases, viz:   Vincent vs. Merle, 19 Ann. 529; Dupuy vs. Bemiss, 2 Ann. 513; Leonard vs. Shiff, 37 Ann. 299, 362; Williams vs. Duer, 14 La, 537; Butt vs. Ellot, 19 Wall. 547.

This is not a case in which it can be said: *Rei ens dat forma.*

It must be noted that in the present case, Benjamin used the word *lien* beside the word privilege.   Lien is a generic term which means either a privilege or mortgage.   Bouvier, L. D. Vo. Lien No. 13.

Has not Benjamin distinctly stated that he acknowledged the indebtedness and in order to secure its payment recognized a privilege and lien on the property ?

Was not this a formal recognition of a right in Aldigé over the real estate for the security of his debt ?

If it was, is not the *name* immaterial by which that right was desig-. nated ?

Had Benjamin used the word *mortgage*, could it be· claimed that he did not intend to hypothecate his property to secure payment of so just a debt ?

· To say that the debt is not secured by a mortgage, is to hold that Benjamin, who intended to do a just act and to *encumber* his property, did not do so and that, where he did *two* things, (consent and encumber) he did *nothing*.

It is a contemporaneous fact that the instrument was duly and seasonably recorded in the mortgage office. This was done to put third parties on their guard, by notifying them that Benjamin had acknowledged an indebtedness and, in order to secure its payment, had encumbered the real estate bought with Aldigé's money.

There is no doubt that Benjamin · could, in this *ex parte* manner, acknowledge the debt and secure it by encumbering his property in favor of Aldigé, though the latter was absent and not a party to the act. Allain vs. Millaudon, 2 L. 552; Hill vs. Barton, 6 Rob. 150; case No. 7398, N. R., Lamkin vs. Maxwell.

The mortgage claimed should be recognized and enforced.