No. 7630.

## SUCCESSION OF HARDY BOISBLANC. ON RULE OF McCULLOCH & SONS.

The presumption of ownership resulting from possession, is not applicable to factors, brokers, and other avowed agents, with respect to money or property intrusted to them for the special purposes of their vocation.

Longbottom's Executors vs. Babcock, 9 La. 44, and Stetson & Avery vs. Gurney, 17 La. 162, reviewed and explained.

Where the principals, merchants of Louisville, Kentucky, intrusted to their agent, a broker of New Orleans, a bill of exchange specially indorsed by them to the broker, to be used by him in purchasing sugar and molasses for them, and the agent caused the bill to be discounted and the proceeds to be placed to his credit in bank, the money did not thereby become the property of the agent; and his succession acquired no better title to it than the deceased agent himself had.

The principal may pursue and recover his property or proceeds in the hands of the legal representative of the deceased agent, whenever it can be identified and distinguished; but the burden of identification and of proof of ownership is on the principal.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J.*

*W. W. King* and *McGloin & Nixon* for plaintiffs in rule, appellees.

*Robert Mott* and *Francis B. Lee* for D. Wilson, public administrator, appellant.

The opinion of the court was delivered by

MARR, J. In the latter part of December, 1878, McCulloch & Sons, of Louisville, Kentucky, remitted to Boisblanc, a broker of New Orleans, to be invested by him in sugar and molasses for their account, a bank-check on New York, for $1500, to their order, which they specially indorsed to the order of Boisblanc. On the 26th December, Boisblanc

had this check discounted, and the proceeds, $1494 38, carried to his credit at the Germania National Bank, where he had an account; and, on the same day, he deposited $316 80 in the same bank. After this he made no deposit, and he drew no check except one, on the 27th December, for $491 15. Shortly after he was taken sick; and, on the 2d January, he died insolvent. His bank account was balanced on the 31st December; and there remained, to his credit, $1398 46; so that of the proceeds of the check remitted by McCulloch & Sons, $95 92 were used in paying the check for $491 15.

McCulloch & Sons claimed this balance as belonging to them; and the administrator claimed it as belonging to the succession of Boisblanc. The bank paid the money to the administrator; and he is appellant from the judgment condemning him to restore it to McCulloch & Sons.

Two decisions of this court are relied upon in support of the claim of the administrator: Longbottom's Executors vs. Babcock, 9 La. 44, and Stetson & Avery vs. Gurney, 17 La. 162. In the first case, Henry had given to his attorney in fact, Longbottom, a check for $1300, to be disbursed for his account, of which Longbottom had disbursed $200. After the death of Longbottom, $1100 in money were found in his store; and Henry claimed that this sum was the balance of the money deposited by him with Longbottom, and that he was entitled to it, by preference, out of the funds of the succession. It does not appear what length of time elapsed between the giving of the check and the death of Longbottom, nor whence the money came which was found in his store. The court said: "There is no evidence to show that this sum is the same money received by the testator;" and Henry was ranked as an ordinary creditor for the balance due him, $1100.

In the second case, Gurney had deposited in bank, in his own name, $10,000, in city notes; and Stetson & Avery, his judgment creditors, seized in the hands of the bank. Robertson intervened, claiming that this money was part of a large sum, $350,000, intrusted by him to Gurney, a cotton-broker, to be used by him in the purchase of cotton for account of Robertson. At that time the law did not permit parties to testify; and, of course, Robertson was not heard as a witness. We infer from the report that Gurney was the only witness called to prove that the money belonged to Robertson; and on his testimony the court of first instance decided that no part of the money was subject to seizure by the creditors of Gurney, except the amount due to him for his commissions. This court decided that Gurney was not competent, because he was a party to the record. Without his testimony it was not possible to identify the money as part of that received by him from Robertson. The court recognized the doctrine, which we do not consider questionable, that the principal is entitled to recover whenever he

·can trace his own property, and distinguish it or its proceeds from the mass of the property of his agent.

Manifestly both these cases were decided upon the conviction of the court that the persons claiming the money had failed to identify it, or to prove that it belonged to them, respectively.

In general, possession is presumptive evidence of ownership; but this is not true with respect to factors, brokers, and avowed agents, whose vocation, whose daily business, is to deal with the property of others, intrusted to them for the special purposes of their vocation. Their possession misleads no one; and they cannot pledge the property of their principals, since their special business is to sell, and not to pledge or dispose of otherwise than by sale. The possession of the agent is the possession of the principal; and the principal may reclaim his property or the proceeds, in the hands of the agent, or of his executor, or administrator, or other legal representative, succeeding merely to his rights; or in the warehouse, or bank, or other depository in which either the property or the proceeds may have been placed by the agent. Of course, in all such cases, the burden is on him who asserts the ownership of that which is not in his actual possession to prove his right and title; and if he cannot do this he cannot be judicially recognized as the owner. We think the cases of Longbottom and Gurney are to be understood in this sense, and in this sense alone. They would otherwise be in conflict with well established principles, and with previous and subsequent decisions of this court. See Story on Agency, secs. 229, 231, and cases cited in notes; 2 Kent. 624.

In Clay vs. His Creditors, 9 Martin, 519, decided in 1821, the pledgor was permitted to recover, by preference, the proceeds of his property, in the hands of the syndics of the insolvent pledgee; and this was shown to be in accordance with the Roman law, the French law, and the Spanish law. It is the law of common sense, and of common honesty.

In L'Hommedieu vs. Penny's Executors, 6 La. 599, Penny, a factor of New Orleans, received the note of the purchaser, payable to his order, for a quantity of lime consigned to him by L'Hommedieu. After Penny's death this note came into the possession of his executors; and they collected the amount. L'Hommedieu claimed the money; and this court, affirming the judgment which condemned the executors to pay it to him, said that the object of the suit was to have the amount of the note separate from the estate of Penny; that the note belonged to L'Hommedieu; and that the proceeds must be returned to him. And yet, the legal title to the note was in Penny, and in his executors after his death. The court recognized, respected, and enforced the beneficial title, the right of the actual owner, against the legal title and apparent right of the mere holder for his benefit.

In Beatty vs. McLeod, 11 An. 76, one Jordan, of the parish of La-fourche, died at Tuscumbia, Alabama. He had a considerable sum of money with him, which, a short time before his death, he handed to a gentleman at Tuscumbia for safe keeping, informing him that it belonged to his minor daughter, whose natural tutor he was. McLeod qualified as tutor of this minor, and he received the money from the gentleman in whose hands it had been left by Jordan. The creditors of Jordan sought to recover it, as belonging to the succession of Jordan. The evidence satisfied the court that this money was part of a larger sum which had come into Jordan's hands as tutor, proceeds of notes which belonged to his daughter as heir of her mother ; and the demand of the creditors was rejected.

The money in this case is fully identified. The check remitted by McCulloch & Sons to Boisblanc was produced on the trial; and the cashier of the Germania Bank testified that it was discounted by the bank, and the proceeds carried to the credit of Boisblanc. The bank-book of Boisblanc and the stub of his check-book were also offered in evidence ; and they prove, beyond doubt, that Boisblanc had not to his credit in bank on the 27th December, independently of the proceeds of the check remitted by McCulloch & Sons, a sum sufficient to pay his check of that date for $491 15. As the balance remaining in bank, after the payment of this check, was $1398 46, and the proceeds of the check deposited 26th December amounted to $1494 38, it is evident that Bois-blanc had not a dollar of his own money in bank after the 27th De-cember ; and that the entire balance to the credit of his account belonged to McCulloch & Sons. The identification is as complete as it could have been if an equal sum of money had been placed in a sealed package, and specially deposited.

The succession of Boisblanc can have no better right or title to this money than Boisblanc had. By indorsing the check to his order, McCul-loch & Sons transferred the legal title to Boisblanc, for a special purpose, which could not otherwise have been conveniently accom-plished; but they did not divest themselves of the real, beneficial ownership. A bill of lading, consigning goods to a factor, for sale, for account of the consignor, vests the legal title and possession in the factor ; but no one imagines that this legal title impresses on the prop-erty all the consequences of beneficial ownership ; or that it subjects it, in the hands of the factor, to the pursuit of his creditors ; or that it divests the beneficial title of the real owner.

We know of no process by which the agent can become the owner of the money or the property of his principal, intrusted to him for a special purpose. The unfaithful or imprudent agent may so deal with the property of the principal as to subject it to the rights of his cred-

itors or other innocent third persons : he may make the tracing and identification of it, and the proof of ownership difficult, even impossible: he may illegally convert it to his own uses, and subject himself to criminal prosecution, under the statute, for embezzlement or breach of trust with respect to it ; but he cannot, as against his principal, make it his own ; nor can he transmit it to his succession by will, or *ab intestate*.

The judgment appealed from is, therefore, affirmed with costs.

Rehearing refused.