HIGGINS, Justice.
 

 This is a suit by a cestui que trust, to recover from the trustee, a bank which is now in liquidation, the sum of $1,665.22, representing income derived from the trust estate.
 

 The defendant adniits that it acted as trustee for the plaintiff and collected the amount in question as income from the trust estate and deposited it to the credit of plaintiff, pri- or to March 1, 1933, in the trust department of the bank, but denies that it can legally pay the plaintiff’s claim in full, because the-funds were commingled with the bank’s general funds in the vault, and because the proclamations issued by the Governor of the state of Louisiana and the President of the United States, as well as the orders of the New Orleans Clearing House Association and the state banking department, prohibited defendant from paying to its depositors and creditors more than 5 per cent, of the balance due, as of March 1, 1933.
 

 There was judgment in favor of the plaintiff as prayed for, ffgainst the bank and the liquidator in charge, ordering the immediate payment and delivery of the funds of the plaintiff; and further ordering a legal mortgage in favor of the plaintiff on all of the property and assets of the bank, in the event the money was'not paid within five days.
 

 Defendant appealed, and the Court ,of Appeal for the First Circuit set aside that por
 
 *1008
 
 tion of the judgment granting the mortgage in favor of the plaintiff, but affirmed it in all other respects. 154 So. 6S1.
 

 Defendant then applied to this court for a writ of certiorari, which was granted, and the case is now before us for review.
 

 The Court of Appeal refused to recognize and accept the statement of the assistant trust officer of the bank contained in an agreed stipulation of facts to the effect that, while the bank kept a separate account of the money which was credited to plaintiff, the funds in question were not segregated but commingled with the other funds of the bank, on the grounds: (1) That defendant had failed to make such a plea; and (2) that article 9 of the answer and article 6 of the agreed statement of facts contained an admission that on March 1, 1933, the identical sum of money claimed was in the hands of the bank, and therefore overcame the effect of what the witness would have sworn to, if called. In short, the court treated the case as if there had not been any commingling of the funds.
 

 Article 9 of the answer and articles 6 and 21 of the agreed statement of facts read, respectively, as follows:
 

 “Art. 9. Respondent admits that at the time of the termination of said trust agreement on April 18,1933, there was in its hands the sum of $1,665.22, representing income from the principal of said trust, which amount respondent collected and deposited to the credit of petitioner prior to March 1,1933, but except as herein admitted respondent denies' the remaining allegations of the Ninth Article of the petition.”
 

 “Art. 6. That on March 1, 1933, there was in the hands of Canal Bank & Trust Company the sum of $1,665.22, representing income from the principal of said trust, which amount respondent collected and deposited to the credit of petitioner prior to March 1, 1933.”
 

 “Art. 21. It is further agreed that if Mr. Junket, Assistant Trust Officer of the Canal Bank & Trust Company, were present and sworn as a witness in this cause, he would testify that:
 

 “The sum of $1,665.22, the subject matter of this suit, was not carried by the Canal Bank & Trust .Company a? a part of its assets, and that if paid out to Mrs. Daugherty by said bank at this time, such payment would not operate to discharge as a whole or in part any indebtedness as distinguished from any Trust, .or other fiduciary duty of said Canal Bank & Trust Company. And that the said Junket would also testify that 'the funds in question were not segregated and were commingled with other funds of the Canal Bank & Trust Company; that the Trust Department of the Canal Bank & Trust Company kept a separate account of the said funds, and that all checks drawn in payment of the fund were signed by the Trust Officer of the Canal Bank & Trust Company."
 

 The introductory paragraph of the stipulation is couched in this language:
 

 “It is stipulated and agreed by'and between the plaintiff and the defendant that the following facts shall be considered as having been proved, without the necessity of offering formal proof thereof.”
 

 
 *1010
 
 We believe.our learned brothers oí the Court of Appeal erred in stating that defendant did not plead that the funds were commingled, because in paragraph 10 of the answer we find the following:
 

 “Respondent admits that in the Agreement of April 18,1933, whereby the trust agreement of February 16, 1924, was terminated, it was stipulated, without prejudice to the rights of either petitioner or respondent,-thát all of petitioner’s right to sue for and recover the said funds or such part thereof as she might be entitled to receive were reserved. Respondent further admits that respondent refused to pay over the full amount of said funds on deposit to the credit of petitioner, except 5% of said amount for the reason that as the result of the action of the State Banking Department of Louisiana and of the President of the United States closing all banks, respondent was prohibited and prevented from paying over to its depositors and creditors more than 5% of the balance due them as of March 1, 1933. Respondent offered to pay petitioner
 
 5%
 
 of the amount aforesaid, or the sum of $83.26, 'which amount petitioner was unwilling to accept. Except as herein admitted, respondent denies the remaining allegations of the Tenth Article of the petition.”
 

 It is our opinion that defendant was entitled to introduce evidence tending to show that, on account of the manner in which the trust funds had been handled, the relation between the plaintiff as beneficiary and defendant as trustee had been changed from owner and trustee, or agent, to that of creditor and debtor, or depositor, as far as the liquidation of the bank was concerned, and that plaintiff was not entitled to any preference on the commingled funds claimed.
 

 Furthermore, the agreed statement of facts was introduced in evidence without any objection by the counsel for the plaintiff, and therefore would have the effect of enlarging the pleadings so as to admit evidence that the funds had been commingled with the bank’s general funds.
 

 Is there a conflict between the admissions of article 9 of the answer and paragraphs 6 and 21 of the agreed statement of facts? There is not any language in article 9 of the answer and paragraph 6 of the stipulation of facts which is inconsistent with the statement of the trust officer contained in article 21 of the stipulation that the funds had been commingled with' the bank’s general funds. . While it is true, 'it is stated that the money in question was not carried as a part of the assets of the bank on its statement, and that payment thereof to plaintiff would only discharge the fiduciary duty of the bank and not operate as an extinguishment of any indebtedness by the bank to her; this, means that, as between the bank and plaintiff, the bank was powerless to change the relation from trustee to that of debtor. However, it does not follow that, in a contest between innocent third persons, the depositors and creditors of the liquidating bank, and the plaintiff, the actions of the defendant in permitting the funds to be commingled would not then place the plaintiff in the category of a creditor or depositor.
 

 It is'our opinion that the statement of the trust officer was admissible in evidence under the pleadings, and was not inconsistent with any admission contained in the defend
 
 *1012
 
 ant’s answer. In the absence of countervailing proof, we conclude that the defendant has shown that, while a separate and distinct account was kept of the funds in the trust department of the bank to the credit of the plaintiff and subject to withdrawal at any time through the trust officer, the' money or funds were commingled with the bank’s general funds in its vault.
 

 The question then arises whether or not the plaintiff is entitled under these circumstances to be paid in full or to be treated as a creditor or depositor of the bank and paid pro rata with the other depositors, by the liquidator.
 

 In the case of Young v. Teutonia Bank & Trust Co., 134 La. 879, 64 So. 806, the bank was appointed as tutor of the minor, under Act No. 45 of 1902, and was vested with the custody and administration of his property. The bank in its capacity as a trust company received for account of the minor the sum of $2,696.64, and opened an account for the minor, showing the relation between them, and agreeing to pay 5 per cent, interest on the money. The minor’s money was commingled with" the general funds of the bank. The bank became insolvent, and in opposing the account it whs contended, in behalf of the minor, that his funds should have been kept separate and apart from the bank’s funds as a separate deposit and as a trust fund, and that therefore the minor was entitled to payment by preference. The opposition to the account was overruled, and this court on pages 889, 890 of 134 La., 64 So. 806, 809, said:
 

 “The said act [Act N.o. 45 of 1902] assumes that the bank will keep accounts with minors, interdicts, etc., but provides that the same shall not be counted among the assets or liabilities of the bank in making the statements required by law.
 

 “The act does not provide for a special deposit of the funds of the minor, interdict, etc., or the keeping of such funds separate and apart from the general fund of the bank.
 
 * * *
 

 “There is in this state no such thing as an equitable lien on money, movables, or other property. With us a lien or privilege is strieti" juris, and must be expressly created by law.
 

 “The contention of the opponent is that the money of the minor was wrongfully mingled with the funds of the bank, and the minor, therefore, continued to be owner; and that the only legal effect of the mingling of the funds of the minor with the moneys of the bank was to substitute for the trust fund received and mingled a like amount to be taken out of the common fund.
 

 “Whatever support these propositions may find in cases decided in other jurisdictions, they are contrary to our well-settled jurisprudence, based on the provisions of the Civil Code. * * *
 

 “This opposition was properly dismissed by the judge a quo. * * * ”
 

 In the case of Young v. Teutonia Bank & Trust Co., 135 La. 66-69, 64 So. 984, 985, it was said:
 

 “ * * *
 
 The right of a principal to recover property in the hands of his defaulting agent is limited to those cases where there has been a deposit in kind, or where the identity of the thing is fully established; mis
 
 *1014
 
 management or failure to pay over money received gives no privilege upon the property of an agent. Whatley v. Austin, 1 Rob. 21; Longbottom’s Ex’rs v. Babcock, 9 La. 50; Matthews, Finley & Co. v. Their Creditors, 10 La. Ann. 342; Succession of Stone, 31 La. Ann. 311; Clason & Co. v. City of New Orleans, 46 La. Ann. 1, 14 So. 306; State ex rel. Girardey v. Southern Bank, 33 La. Ann. 957; In re La. Sav. Bank & Safe Dep. Co. in Liq., 40 La. Ann. 514, 4 So. 301; Civ. Code, arts. 2926, 2940, 2944, 2963, 3222.”
 

 There have been a number of decisions interpreting article 3222, R. C. C., which deals with deposits in kind. It has been uniformly held that, in order for the principal to recover his property deposited with the defaulting agent or trustee, he must identify it. If it can be properly' identified, then, of course, the principal is entitled to secure the return of his property in preference to other creditors of the defaulting agent or trustee, on the ground of ownership thereof. But, where there has been a commingling of the thing deposited by the defaulting agent or trustee so that its identity has been destroyed, the principal is then treated as a creditor of the defaulting agent’s estate and shares pro rata with his other creditors. Longbottom’s Executors v. Babcock, 9 La. 50; Succession of Stone, 31 La. Ann. 314; In re Louisiana Savings Bank & Safe Deposit Co., 40 La. Ann. 514, 4 So. 301; Succession of Boisblanc, 32 La. Ann. 109; Clay v. His Creditors, 9 Mart. (O. S.) 519.
 

 In the recent case of Tropical Printing Co., Inc., v. Union Title Guarantee Co., Inc., 157 So. 534, 539,1 we had occasion to review the jurisprudence on this subject. In that case, the defaulting trustee first deposited the trust funds in its own bank account, but later transferred them to a special or separate trust account in the bank. In deciding that the funds had not lost their identity, we said:
 

 “We concur in the opinion that there is no difference, as far as the corporation’s claim of ownership of these funds is concerned, between the funds that were deposited directly into the trustee account and the funds that were first deposited into the corporation’s bank account and afterwards transferred to the trustee account, where -the funds belonged. An agent who receives money to be deposited for his principal in a separate bank account, so labeled that it can be identified as belonging to his principal, cannot acquire or affect the ownership of the money, or- of the deposit, by first depositing the money into his, the agent’s, bank account, and after-wards transferring the same amount of money into a deposit so labeled that it can be identified as belonging to the principal. The principal’s right in such a case is not merely a lien on the fund, or on the deposit, but is ownership of it. The agent in such a ease is not the debtor but the trustee of the principal ; and the relation of principal and agent cannot be converted, into that of creditor and debtor, by the agent’s unauthorized act of temporarily converting to his own use money deposited with him for delivery to his principal, and afterwards deposited by the agent for account of his principal. McDonogh v. Delassus, 10 Rob. 481. If the principal can identify his property or its proceeds in the hands of his agent, the principal is entitled to it. L’Hommedieu v. Penny’s Executors, 6 La. 599; Whatley v. Austin, 1 Rob. 21 (obiter); Stetson, Avery & Co. v. Gurney, 17 La.
 
 *1016
 
 162; Bloodworth v. Jacobs, 2 La. Ann. 24; Beatty v. McCleod, 11 La. Ann. 76.
 

 “The receivers contend that the fund on deposit in the trustee account lost its identity, as the property of the note holders for whose account it was deposited, and became mingled with the funds of the insolvent corporation, by the corporation’s borrowing and lending a part of the fund, and afterwards depositing other money in'the trustee account to cover the deficit. But we do not see why that should affect the title to the fund on deposit in the so-called trustee account. The important fact is that no money belonging to the corporation, or to be expended for the corporation or for any one except the note holders who owned the money in the trustee account, was ever deposited in that account, or mingled with the funds in that account.”
 

 As the evidence in the instant case shows that the money belonging to the plaintiff was intermingled with the bank’s general funds, it is impossible to identify or distinguish her money from the other deposits, and, consequently, we are powerless to return it to her, and she must assert her claim as a creditor in the account of the liquidator.
 

 Do the provisions of Act No. 107 of 1920, which allow parties to enter into trust agreements, change the law on this subject? It is contended by the plaintiff that it was the duty of the bank to keep the trust funds deposited in its name as trustee in an incorporated bank of this state separate and apart from its own funds, and that the trustee or bank, by breaching the trust agreement and in violating the statute, in failing to keep the funds separate and apart, cannot deprive plaintiff of the right to the return of hqr money in full. It is further stated that the liqrridator of the insolvent bank is in no better position to do so than the bank itself. Defendant counters by saying that the act does not require a bank acting as trustee to keep' the income derived from the corpus of the trust it administers separate and apart from the general funds of the bank.
 

 Assuming that the act requires the bank as trustee to keep the trust funds separate from its own, and that it failed to do so, a view most favorable to the plaintiff, we do not believe that the legal situation is changed, because the statute does not make any provision for a lien or privilege in favor of the beneficiary of the trust against the assets of the defaulting trustee, in preference to the other creditors of the trustee’s estate. The act simply provides that, if thq trustee does not faithfully discharge his duties, he is subject to summary removal.
 

 The situation where the trustee violates the provisions of the statute in failing to keep a separate and distinct account of the trust funds, in a chartered bank of the state, is comparable to the failure of the agent or trustee, in violation of the trust agreement, to keep the thing deposited separate and apart from his own estate, so that it can bo distinguished and identified. In the latter instance or case, courts have uniformly held that a mere breach of duty on the part of the trustee does not create a lien or privilege in favor of the beneficiary of the trust so as to give him a preference over the other creditors of the trust estate.
 

 In the ease of the Succession of Boisblanc, 32 La. Ann. 109, 112, the court said:
 

 
 *1018
 
 “The unfaithful or imprudent agent may so deal with the property of the principal as to subject it to the rights of his creditors or other innocent third persons: he may make the tracing and identification of it, and the proof of ownership difficult, even impossible: he may illegally convert it to his own uses, and subject himself to criminal prosecution, under the statute, for embezzlement or breach of trust with respect to it; but he cannot, as against his principal, make it his own, nor can he transmit it to his succession by will, or ab intestate.”
 

 It might be well to point out at this time that the controversy here is really between the general creditors or depositors of the bank, represented by the liquidator, and the plaintiff, who claims to be entitled to a preference, and not a contest between the plaintiff and the bank, as trustee. The bank, on March 1, 1933, and thereafter, was in a state of unliquidity, and unable to pay its obligations in full.
 

 Privileges are' stricti juris in Louisiana, and can only be allowed when plainly proved by statute. Article 3185, R. O. C.; Landry v. Blanchard, 16 La. Ann. 173; Boylan’s Detective Agency & Protective Police v. Brown & Co., 157 La. 332, 102 So. 417; Cottam & Co. v. O’Shee Bros. Coffee Co., 2 La. App. 427; Succession of Williams, 7 La. App. 465; Haralson v. Faulk, 2 La. 92; Hagan v. Sompeyrac, 3 La. 154; Union Bank v. Slidell, 11 La. 23; Grant v. Fiol, 17 La. 158; Shreveport National Bank v. Maples, 119 La. 41, 43 So. 005.
 

 Act No. 107 of 1920 does not create a privilege on trust funds which have been commingled with the money of the defaulting trustee, in favor of the beneficiary of the trust, and therefore does not change the jurisprudence on this subject.
 

 Was the bank prohibited from paying the funds claimed to the plaintiff as a result of the various proclamations issued in connection with what was generally
 
 termed the
 
 “Banking Holiday”? On March 1, 1933, the Governor of Louisiana, by proclamation, declared March 2, 3, and 4, 1933, banking holidays throughout the state, and ordered that banking business be suspended on those days. On the same day, the New Orleans Clearing House Association, by a resolution, with the consent and approval of the Governor, suspended payment of bank demand obligations. On March 2, 1933, the New Orleans Clearing House Association,' by resolution and with the consent and approval of the Governor, restricted the payment of deposits in excess of 5 per cent, of the balance, at the close of business on March 1,1933. On March 3d the bank opened on a 5 per cent, restricted basis, paying its depositors and creditors accordingly. The Clearing House Association, by further resolution, again suspended payment of demand obligations on March 4 and 6, 1933. On March 6,1933, the President of the United States declared a national banking holiday, closing all banks in the United States, including the defendant bank, which was a member of the Federal Reserve System. On the same day, the Clearing House Association, with the approval of the Governor, suspended the payment of demand obligations from March 6th to March 9th/ On March 9lh the President of the United States, under the laws of the United States and an Act of Congress of March 9, 1933 (12 USCA § 201 et seq.), closed all banks for an indefinite period of time, but
 
 *1020
 
 authorized the Secretary of the Treasury to grant licenses to such banks as he might determine were in the proper condition to reopen.
 

 Defendant bank was never granted a license to reopen for normal banking functions. On March 19, 1933, the Treasury Department promulgated Regulation No. 27, which provided that:
 

 “Any State Banking Institution which is a member of the Federal Reserve System and which is not licensed by the Secretary of the Treasury to reopen for the performance of usual banking functions, may, with the approval of the appropriate State authority having immediate supervision of such banking institution, permit withdrawals by depositors and make payments to creditors of such percentage of the amounts due them (not exceeding
 
 5%)
 
 as it may' determine, provided that when or before the time of such withdrawal or payment it shall set aside and make available for such purposes a fund for the benefit of and sufficient to pay all depositors and creditors the percentage so determined.”
 

 Prior to March 1,. 1933, the bank collected-, the sum in question as income from the principal of the trust, and deposited it to the credit of the plaintiff in the trust department, but permitted the money to be commingled with the bank’s general funds in the vault
 

 On April 18, 1933, plaintiff demanded the money from the defendant bank, and the bank tendered her 5 per cent, of the deposit, or $83.26, which she refused to accept.
 

 From the authorities and reasons which we •have previously given, the plaintiff, subsequent to March 1, 1933, could not have identified her money from the funds of the other depositors and creditors of the bank, as all of these funds were intermingled in the vault, and therefore she could not demand payment in full of her claim when there was insufficient funds to pay the depositors and creditors of the -bank. In short, the action of the trustee in permitting the funds to be commingled changed plaintiff’s legal status- from that of the owner of the funds to that of a depositor or creditor of the bank. Having been placed in the category of a depositor or a creditor of the bank, the officers of that institution were prohibited under the specific provisions of Regulation 27 from paying her in full. The plain purpose of the Treasury Regulations, as well as the various proclamations issued by the President of the United St¿tes and the Governor of the state, and resolutions of the Cleáring House Association, were to prevent those who had deposits subject to withdrawal on demand from immediately withdrawing their funds from the bank and to hold the affairs of banking institutions in difficulty, status quo, in order that the rights of all parties concerned might be preserved and asserted in a more orderly manner. If-it had not been for these regulations and proclamations, there -would have-been a run on the bank, with the result that the depositors who first presented themselves-would have been paid in full, and, after the bank’s exchequer had been depleted, the remaining depositors would, in all likelihood,, have sustained a total loss.
 

 It is our opinion that the bank officials, properly refused to honor plaintiff’s demand for payment in full, and that the regulations: of the Treasury Department with reference to trust and other fiduciary funds were not
 
 *1022
 
 applicable, because the plaintiff was unable to identify the funds held for her account under the trust agreement, and therefore became a creditor or depositor of the bank.
 

 Plaintiff is entitled to a judgment recognizing her as an ordinary creditor of the bank for the sum of $1,665.22, without interest, less the liquidating dividend of $525.80 previously paid her, the balance ($1,139.42), to be paid her in due course of liquidation,' according to law.
 

 Plaintiff’s claim to a legal mortgage on the defendant’s assets is asserted under articles 3315 and 3355, R. C. C., on the ground that the defendant’s representatives inter-meddled in her estate while she was a minor. The Court of Appeal properly held that plaintiff had failed to show that defendant was an intermeddler and that she also failed to preserve her alleged mortgage by recording a sworn statement in the mortgage office.
 

 For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is annulled, avoided, and reversed, in so far as it affirms the judgment of the trial court in favor of the plaintiff and against the Canal Bank & Trust Company, in liquidation, J. S. Brock, state banking examiner, and H. G. Thompson, special agent in charge of the liquidation; and is affirmed, in so far as it rejects the alternate demand of the plaintiff for a mortgage on the assets of the bank; and it is now; ordered, adjudged, and decreed that there be judgment herein in favor of Mrs. Sarah C. Daugherty, and against the Canal Bank & Trust Company, in liquidation, J. S. Brock, state banking commissioner, and H. G. Thompson, special agent in charge of the liquidation, recognizing her as an ordinary creditor to the extent of $1,665.22, without interest, subject to a liquidating dividend of $525.80,. and such other liquidating dividends that she might have received pendente lite, payable in due course of liquidation, and according to law.