SAMUEL, Judge.
The substituted plaintiffs in this suit (the original plaintiff was deceased) obtained a writ of fieri facias and made the Hibernia National Bank in New Orleans garnishee for the purpose of satisfying a money judgment against the defendant, Carleton King. At the time the interrogatories were served the bank held the sum of $3,935.85 for the joint account of Carleton King and Grace King Coxe. The latter died after the issuance of the writ and the administrator of her succession intervened, alleging that the judgment debtor, Carleton King, had no interest in the funds seized and praying for judgment dissolving the seizure and decreeing the funds to be the property of the succession. There was judgment in the trial court in favor of the intervenor as prayed. Plaintiffs have appealed.
The bank had received a check drawn by Paño Tech Exploration Corp., in the amount of $11,807.55 and made payable to the Hibernia National Bank, for the joint credit of Frederic D. King, Carleton King, Grace King Coxe and H. C. Miller King. Paño Tech instructed Hibernia to make payment of one-third ($3,935.85) of the check to Frederic D. King, one-third to Carleton King and Grace King Coxe, and one-third to H. C. Miller King. The one-third held by the bank for the account of Carleton King and Grace King Coxe was seized.
The check represented payment of annual delay rental under an oil, gas and mineral lease dated October 1, 1954 and registered in the conveyance records of St. Martin Parish where the leased property was located. By judgment of possession rendered on March 30,1943 in the Succession of Nina Ansley King, No. 245,052 of the docket of the Civil District Court for the Parish of Orleans, Grace King [Coxe] was placed in possession of an undivided one-third interest in that property, subj ect to a usufruct in favor of Carleton King, her father, and Frederic D. King and Henry C. Miller King were placed in possession of the remaining undivided two-thirds interest. All four executed the lease and appear therein as lessors.
Plaintiffs make three alternative contentions: (1) The commingling of the seized funds with other funds on deposit with the bank and the resulting loss of identity makes it impossible to trace their source and therefore they cannot now be claimed as the property of the intervenor; (2) the appearance of the judgment debtor in the lease as a lessor establishes the fact that any payments made under the lease to him were necessarily made in his capacity as lessor, not as usufructuary, and the lease cannot now be collaterally attacked to show otherwise; and (3) intervenor has offered insufficient proof to show the succession’s *72 ownership. We do not agree with any of the contentions.
 The cases cited by plaintiffs in support of their first contention are: Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482; In re Hibernia Bank & Trust Co., 185 La. 448, 169 So. 464; In re Liquidation of Canal Bank & Trust Co., 181 La. 856, 160 So. 609, 99 A.L.R. 473; Daugherty v. Canal Bank & Trust Co., 180 La. 1003, 158 So. 366; and Schmidt v. Barker, 17 La.Ann. 261. All but two involve bank liquidations where the plaintiffs were seeking a preference over other depositors. The two exceptions are Burton v. United States, which involved a criminal jurisdictional question, and Schmidt v. Barker, in which the plaintiff sought to have money he had deposited with the defendant’s bank returned to him in the same form in which it had been deposited, i. e., United States currency, and the defendant insisted that he accept Confederate notes. We agree with the rule of law followed in the cited cases. In the absence of a special agreement to the contrary, bank deposits belong to the bank and become part of its general funds when commingled therewith. They are not actually deposits but are equivalent to loans for use and the relation between the bank and its depositor is that of debtor and creditor.
 But the rule has no application to plaintiffs’ contention. The fact that the funds deposited were commingled with the bank’s general funds is of no importance. Involved here is simply the seizure of a credit and there is nothing to prevent the owner or part owner of that credit from showing his ownership. This is true even in the case where the deposit is made in the name of another. George Sliman & Co. v. Hemperly, La.App., 168 So. 718. It is certainly true where the deposit is in the names of two persons; either has the right to prove his ownership in whole or in part. A similar situation exists where there is a contest between husband and wife relative to whether a bank account is community or separate property of the wife. In such cases the mixing of separate and community funds in the same account does not of itself convert the account into community property and does not prevent tracing of separate funds where the same can be done with sufficient certainty to establish separate ownership. Graves v. United States Rubber Company, 237 La. 505, 111 So.2d 752; Succession of Blades, La.App., 127 So.2d 263.
At the time the lease was executed in 1954 there was uncertainty relative to a usufructuary’s rights and entitlements in connection with mineral leases on lands subject to the usufruct. This uncertainty has been removed by King v. Buffington, 240 La. 955, 126 So.2d 326 and Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817, both of which were decided in 1960, prior to the seizure here. Those two cases hold that, as between naked owner and usufructuary, the former has exclusive authority to grant a lease to drill and is entitled to all bonuses and delay rentals where there was neither lease nor production of minerals at the time the usufruct commenced. In the instant case the usufruct commenced more than 11 years before the lease was executed and it is clear that the intervenor alone, as naked owner, was entitled to the delay rentals and that the judgment debtor, as usufructuary, had no ownership therein. The usufructu-ary’s appearance in the lease as one of several lessors does not change this fact of ownership. Speculation as to why he appeared as lessor is unnecessary. However, in view of the uncertainty relative to the respective rights of naked owner and usu-fructuary, which existed at the time the lease was executed, and the obvious intent of the lessee to obtain a valid lease of all interests in the property, that reason would appear to be clear. The naked owner did not lose her interest in the property simply because the usufructuary made an appearance in the lease as lessor. As between naked owner and usufructuary the former has the right to assert her ownership. And she has the same right to do so against the usufructuary’s judgment creditor.
*73 Proof that the judgment debtor was a usufructuary was made by introduction of the judgment of possession in the Succession of Nina Ansley King, a proceedings in the same court in which the instant case was tried. A copy of the 1954 oil and mineral lease, certified as being a true copy by the Clerk of Court of St. Martin Parish, was introduced over objection by plaintiffs. The objection was correctly overruled by the trial judge. Under LSA-Const. Art. 7, § 66, which provides that the clerk of the District Court in all of the parishes except Orleans is the ex-officio recorder of conveyances, mortgages and other acts, the Clerk of Court of St. Martin Parish was the officer having custody of the lease. And LSA-C.C.P. Art. 1394 provides that an official record of the State of Louisiana, when admissible for any purpose, may be evidenced by a copy certified as being true by the officer having custody thereof. We conclude that sufficient proof has been properly offered to show the succession’s ownership of the seized funds.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.